# United States Tax Court

167 T.C. No. 7

BIG APPLE TOMPKINS REALTY LLC, MOJAHED H. BHUTTA,
PARTNERSHIP REPRESENTATIVE,
Petitioner(s)

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 19040-23.                              Filed August 5, 2026.

————

R mailed a Notice of Final Partnership Adjustment (FPA) to an entity (PS) treated as a partnership for federal income tax purposes and subject to the partnership audit and litigation procedures of the Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 1101, 129 Stat. 584, 625–38, and its partnership representative (PR). PS, by and through PR, filed a Petition with this Court under I.R.C. § 6234. R moves to dismiss this case for lack of jurisdiction on the ground that the Petition was not filed within the time prescribed by I.R.C. § 6234(a) or 7502. PS objects and argues that it did not receive the FPA until the I.R.C. § 6234(a) petition filing deadline had passed.

*Held*: Whether an FPA is properly issued and mailed is determined in pari materia with our deficiency caselaw.

*Held, further*, R properly issued and mailed the FPA to PS and PR.

*Held, further*, the 90-day filing deadline in I.R.C. § 6234(a) is not jurisdictional.

*Held, further*, R's Motion to Dismiss for Lack of Jurisdiction will be denied.

**Served 08/05/26**

Mojahed H. Bhutta, pro se.

*Mimi M. Wong* and *Sharmila J. Porter*, for respondent.

## OPINION

MARVEL, *Judge*: This matter is before the Court on respondent's Motion to Dismiss for Lack of Jurisdiction (Motion) on the ground that the Petition was not filed within the time prescribed by section 6234(a)[1] or 7502.

### *Background*

The following facts are derived from the parties' pleadings and Motion papers. They are stated solely for the purpose of resolving respondent's Motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

Big Apple Tompkins Realty, LLC (Big Apple), is treated as a partnership for federal income tax purposes, and it is subject to the partnership audit and litigation procedures established by the Bipartisan Budget Act of 2015 (BBA), Pub. L. No. 114-74, § 1101, 129 Stat. 584, 625–38.[2] Mr. Bhutta is Big Apple's partnership

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. More specifically, references to sections 6221–6241 are references to the applicable BBA provisions, and references to former sections 6221–6234 are references to the TEFRA provisions. *See infra* note 2.

[2] The BBA repealed the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, §§ 401–407, 96 Stat. 324, 648–71. BBA § 1101(a), (c)(1), 129 Stat. at 625. BBA § 1101 (as amended by the Consolidated Appropriations Act, 2016 (CAA 2016), Pub. L. No. 114-113, div. Q, § 411, 129 Stat. 2242, 3121–22 (2015), and the Consolidated Appropriations Act, 2018 (CAA 2018), Pub. L. No. 115-141, div. U, §§ 201–207, 132 Stat. 348, 1171–83) applies to returns filed for partnership taxable years beginning after December 31, 2017. BBA § 1101(g)(1), 129 Stat. at 638; *see also* CAA 2016, div. Q, § 411(e), 129 Stat. at 3122 ("The amendments made by this section shall take effect as if included in section 1101 of the Bipartisan Budget Act of

representative. *See* § 6223(a); *see also* Rule 255.1(b)(3). Big Apple's principal place of business was Staten Island, New York, when the Petition was filed.

On November 13, 2023, Big Apple filed its Petition in this Court. The Petition arrived at the Court in an envelope bearing a printed U.S. Postal Service (USPS) stamp dated November 6, 2023, which partially obscures what is presumably a postmark beneath it. Big Apple attached to its Petition two copies of the Final Partnership Adjustment (FPA) dated August 11, 2022, one addressed to Big Apple and the other addressed to Mr. Bhutta. *See* §§ 6231(a)(3), 6234(a); Rules 255.1(b)(4), 255.2(b)(10). The FPA determined an imputed underpayment of $87,586 and a section 6662(d) accuracy-related penalty of $17,517 for tax year 2018.

Respondent filed his Answer on January 24, 2024. On March 8, 2024, respondent filed the Motion. The Motion alleges that respondent sent the two copies of the FPA via certified mail on August 11, 2022, to Big Apple's and Mr. Bhutta's last known addresses. *See* § 6231(a) (flush language). Attached to the Motion are USPS Form 3877, Firm Mailing Book for Accountable Mail, and two USPS Forms 3800, Certified Mail Receipt. The Motion requests that the Court dismiss this case for lack of jurisdiction on the ground that the Petition was not filed within the time prescribed by section 6234(a) or 7502.

On March 26, 2024, Big Apple filed its Objection to Motion to Dismiss for Lack of Jurisdiction (Objection). The Objection states that an FPA "was not received by the Petitioner(s) or by the duly appointed Representative (Power of Attorney) until November, 2023. Petitioner(s) promptly filed a Petition with the United States Tax Court, as required." The Objection "requests that the Motion . . . be denied and that the appeal be allowed to proceed."

On June 10, 2025, we ordered respondent to file a supplement to his Motion. We noted that respondent's Motion referred to, but did not attach, certain "USPS.com tracking" information. We thus directed respondent to attach the tracking information or otherwise state whether it is in respondent's possession. On June 27, 2025, respondent filed a First Supplement to Motion to Dismiss for Lack of Jurisdiction

---

2015."); CAA 2018, div. U, § 207, 132 Stat. at 1183 ("The amendments made by this title shall take effect as if included in section 1101 of the Bipartisan Budget Act of 2015."). The BBA applies in this case because the year before the Court is 2018.

stating that respondent is not in possession of any USPS tracking information other than the mailing information attached to the Motion.

*Discussion*

I.     *BBA Partnership Audit Procedures*

In 2015 Congress enacted the BBA, which repealed TEFRA. BBA § 1101(a), (c)(1), 129 Stat. at 625; *see supra* note 2. The BBA created a new set of rules for making adjustments to partnership-related items for tax years beginning after December 31, 2017. *See* BBA § 1101(g)(1), 129 Stat. at 638. The BBA applies to any entity that is required to file a partnership return under section 6031(a) or that files a partnership return. §§ 6221(a), 6241(1), (8); Treas. Reg. § 301.6241-5; *cf.* § 6221(b) (providing an election out of the BBA rules for certain eligible partnerships).

An audit under the new procedures begins with the Commissioner's mailing the partnership and the partnership representative a notice that he has initiated an administrative proceeding. § 6231(a)(1). During the audit the partnership is the sole party to appear before the Commissioner and is represented by the partnership representative, who has the sole authority to act on behalf of the partnership. § 6223(a). All partners are bound by the actions of the partnership during these proceedings. § 6223(b). The Commissioner determines partnership adjustments, if any, at the partnership level, and any tax attributable to those adjustments is also assessed and collected at the partnership level. § 6221(a); *cf. Goldberg v. Commissioner*, 73 F.4th 537, 539 (7th Cir. 2023) (explaining that, under TEFRA, assessment and collection of tax occurred at the partner level), *aff'g* T.C. Memo. 2021-119. A partnership adjustment comprises any adjustment to a partnership-related item, which includes (1) any item or amount with respect to the partnership that is relevant in determining the income tax liability of any person and (2) a partner's distributive share of any such item. § 6241(2).

To make those adjustments, the Commissioner must issue a Notice of Proposed Partnership Adjustment (NOPPA) within a specified time. §§ 6231(a)(2), (b)(1), 6235(a); *see Mammoth Cave Prop., LLC v. Commissioner*, No. 5401-24, 166 T.C., slip op. at 7 (Mar. 9, 2026); *JM Assets, LP v. Commissioner*, 165 T.C. 1, 10–11 (2025). The NOPPA includes the adjustments as well as the amount of any imputed underpayment due from the partnership. The imputed underpayment

is calculated by applying the highest marginal income tax rate to the net partnership adjustments.[3] § 6225(b). The default rule under the BBA is that an imputed underpayment is assessed and collected from the partnership in the adjustment year, not from the reviewed-year or adjustment-year partners.[4] *See* §§ 6221(a), 6225(a)(1), 6232(a); *see also* § 6225(d) (defining "adjustment year" as the year in which a decision made under section 6234 becomes final, a request for administrative adjustment is made under section 6227, or an FPA is mailed under section 6231, and "reviewed year" as the year to which the adjusted item relates). After the issuance of the NOPPA and before assessment, however, the partnership may submit a request to modify the imputed underpayment set forth in the NOPPA. § 6225(c). The partnership has 270 days from the date the Commissioner mails the NOPPA to submit a modification request to the Commissioner. § 6225(c)(7); Treas. Reg. § 301.6225-2(c)(3)(i).

The Commissioner generally must wait 270 days after issuing the NOPPA before issuing the FPA, *see* § 6231(b)(2), and then has 60 days to do so, *see* § 6235(a)(3).[5] To make his final determination, the Commissioner must mail an FPA to the partnership and the partnership representative. § 6231(a)(3); *Mammoth Cave*, 166 T.C., slip op. at 7; *JM Assets, LP*, 165 T.C. at 9. From that FPA, the partnership may file a petition for judicial review with the Tax Court, the Court of Federal Claims, or the district court where the partnership's principal place of business is located. § 6234(a). A petition must be filed within 90 days of the date the FPA is mailed. *Id.* An assessment of an imputed underpayment may be made after the close of that 90-day period or, if a petition is filed, upon final decision of the court. § 6232(b). If a petition

---

[3] More precisely, an imputed underpayment is calculated by netting "positive adjustments," defined as any adjustments that are not negative, against "negative adjustments," defined as a decrease in an item of income, an increase in item of credit, a decrease in item of tax or penalty, or a decrease to an imputed underpayment. *See* Treas. Reg. § 301.6225-1(b), (d)(2). Adjustments are classified as positive or negative under the grouping rules in Treasury Regulation § 301.6225-1(c), and these grouping rules determine whether a negative adjustment may be netted against a positive adjustment. *Id.* para. (b)(2).

[4] The BBA provides for alternative assessment and collection rules as well. *See, e.g.*, § 6226 (providing an election for a partnership to cause partnership adjustments to be taken into account by reviewed-year partners); § 6221 (providing an election for the BBA to not apply); § 6232(f) (assessing on each adjustment-year partner a partner's proportionate share of an imputed underpayment).

[5] The Commissioner must wait 270 days from the issuance of the NOPPA and has at least 330 days to issue the FPA, providing a 60-day window.

is filed in accordance with section 6234(a), the court has jurisdiction to determine all partnership-related items, the proper allocation of such items, and the applicability of any penalty or addition to tax for the year to which the FPA relates. § 6234(c). Once the Commissioner makes an assessment and provides notice and demand for payment, the partnership has 10 days to pay the imputed underpayment, after which the Commissioner may assess on each adjustment-year partner a tax equal to his proportionate share of the imputed underpayment. § 6232(f)(1)(B).[6]

II.    *Jurisdiction*

We are a court of limited jurisdiction and can exercise our jurisdiction only to the extent provided by Congress. *See* § 7442; *Commissioner v. Zuch*, 145 S. Ct. 1707, 1712 (2025) (citing *Commissioner v. McCoy*, 484 U.S. 3, 7 (1987)); *Judge v. Commissioner*, 88 T.C. 1175, 1180–81 (1987). Nonetheless, we have jurisdiction to determine whether we have jurisdiction. *See Bongam v. Commissioner*, 146 T.C. 52, 54 (2016); *Kluger v. Commissioner*, 83 T.C. 309, 314 (1984). Even when we lack jurisdiction, we have jurisdiction to determine the reason we lack jurisdiction. *See Shelton v. Commissioner*, 63 T.C. 193, 194–95 (1974). Where this Court's jurisdiction is duly challenged, our jurisdiction must be affirmatively shown by the party seeking to invoke it. *See David Dung Le, M.D., Inc. v. Commissioner*, 114 T.C. 268, 270 (2000), *aff'd*, 22 F. App'x 837 (9th Cir. 2001); *Romann v. Commissioner*, 111 T.C. 273, 280 (1998); *Fehrs v. Commissioner*, 65 T.C. 346, 348 (1975). To meet this burden, petitioner, as the party seeking to invoke our jurisdiction, "must establish affirmatively all facts giving rise to our jurisdiction." *David Dung Le, M.D., Inc.*, 114 T.C. at 270. The jurisdictional prerequisites to bring a section 6234 case in this Court are matters of first impression for us, and we now turn to them.

III.    *FPA Issuance and Timeliness of the Petition*

We have held in the deficiency context that we have "no jurisdiction unless a proper notice of deficiency has been mailed in accordance with the provisions of law," *Heaberlin v. Commissioner*, 34 T.C. 58, 59 (1960), and that a "valid notice of deficiency has been issued if it is mailed to the taxpayer's last known address by certified or

---

[6] The Commissioner must make this assessment within two years of the date on which notice and demand for payment of the imputed underpayment is provided to the partnership and/or partnership representative. § 6232(f)(6); *see also* § 6231(a).

registered mail," *Pietanza v. Commissioner*, 92 T.C. 729, 736 (1989) (citing § 6212(a) and (b)), *supplemented by* T.C. Memo. 1990-524, *aff'd*, 935 F.2d 1282 (3d Cir. 1991) (unpublished table decision). After TEFRA's enactment, we generally applied Notice of Deficiency issuance and mailing principles to Notices of Final Partnership Administrative Adjustment (FPAAs), albeit with appropriate adjustments for TEFRA's terms.[7] *See Wise Guys Holdings, LLC v. Commissioner*, 140 T.C. 193, 197 (2013) (stating, in connection with a question about whether a second FPAA was valid, that "we are mindful of the related law applicable to the mailing of two notices of deficiency"); *Clovis I v. Commissioner*, 88 T.C. 980, 982 (1987) ("[T]he long established principle applicable to notices of deficiency, viz, that no particular form is necessary, should apply with equal force to a FPAA."); *cf. Triangle Invs. Ltd. P'ship v. Commissioner*, 95 T.C. 610, 613–17 (1990) (discussing the Commissioner's obligation under TEFRA to use the names, addresses, and profit interests shown on the partnership return for the year at issue, as modified by additional information received in accordance with regulations, in issuing and mailing an FPAA). We applied these principles because, like a Notice of Deficiency, an FPAA "is the notice to affected taxpayers that respondent has made a final administrative determination for particular tax years," and its issuance "is a prerequisite to an assessment." *Clovis I*, 88 T.C. at 982; *see also Mammoth Cave*, 166 T.C., slip op. at 10.

Similarly, under the BBA, an FPA provides notice of a final administrative determination for one or more tax years,[8] *Mammoth Cave*, 166 T.C., slip op. at 10, and is a prerequisite to assessment, *see* § 6232(b)(1). The statutory text concerning the issuance and mailing of a notice of deficiency is very similar to the text concerning the issuance and mailing of an FPA.[9] *Compare* § 6212(b)(1) ("[N]otice of a deficiency in respect of [income, gift, or certain excise taxes] . . . if mailed to the

---

[7] TEFRA did not use the last known address rules. *See* § 6223(c)(1); *see also Blum v. Commissioner*, T.C. Memo. 2025-18, at \*28 ("The last known address rules do not apply to FPAAs. . . . [T]he regulations provide specific, detailed instructions on the requirements for updating the address of a notice partner including what information taxpayers are required to provide.").

[8] The FPA in this case concerns respondent's determination of an imputed underpayment and an accuracy-related penalty for 2018.

[9] The BBA also adopts the concept of the last known address, which has a lengthy history in the deficiency context and is not specifically defined in section 6231 or Treasury Regulation § 301.6231-1. *Cf. McCormick v. Commissioner*, 55 T.C. 138, 141–42 (1970); Treas. Reg. § 301.6212-2.

taxpayer at his last known address, shall be sufficient . . . even if such taxpayer is deceased, or is under a legal disability, or, in the case of a corporation, has terminated its existence."), *with* § 6231(a) (flush language) ("Any notice of a final partnership adjustment shall be sufficient if mailed to the last known address of the partnership representative or the partnership (even if the partnership has terminated its existence)."). Additionally, we recently held in *Mammoth Cave* that a NOPPA under the BBA should be subject to the same "adequate or minimal notice" mailing standard as an FPAA under TEFRA. *Mammoth Cave*, 166 T.C., slip op. at 11. Applying the principle that "the Code must be given 'as great an internal symmetry and consistency as its words permit,'" *Commissioner v. Lester*, 366 U.S. 299, 304 (1961) (quoting *United States v. Olympic Radio & Television, Inc.*, 349 U.S. 232, 236 (1955)), we conclude that the BBA's provisions concerning the issuance and mailing of an FPA should, as with an FPAA under TEFRA, be construed in pari materia with the Code's provisions concerning the issuance and mailing of a Notice of Deficiency.

Big Apple has not disputed that the addresses shown for it and Mr. Bhutta on the two copies of the FPA are their respective last known addresses.[10] We therefore need address only the evidence of mailing.

We have not previously considered which party should bear the burden of proving the date of mailing for an FPA. Generally, our caselaw provides that the Commissioner bears the burden of proving, by competent and persuasive evidence, the date that a notice was mailed. *See Coleman v. Commissioner*, 94 T.C. 82, 90 (1990); *Magazine v. Commissioner*, 89 T.C. 321, 324–27 (1987); *August v. Commissioner*, 54 T.C. 1535, 1537 (1970). We apply this standard in deficiency cases, lien or levy cases under section 6320 or 6330, and section 7436 employment status redetermination cases. *See, e.g.*, *Belagio Fine Jewelry, Inc. v. Commissioner*, 162 T.C. 243, 248 (2024); *Cataldo v. Commissioner*, 60 T.C. 522, 524 (1973), *aff'd per curiam*, 499 F.2d 550 (2d Cir. 1974); *Portwine v. Commissioner*, T.C. Memo. 2015-29, at *10–11, *aff'd*, 668 F. App'x 838 (10th Cir. 2016).

We recently discussed the factors bearing on the allocation of burden of proof in *Belagio Fine Jewelry*, 162 T.C. at 246, and stated that

---

[10] In view of respondent's averred use of certified mail to send the FPA at issue here, we need not decide whether it is necessary for the Commissioner to use certified or registered mail (as opposed to other modes of mailing) to obtain the benefits of the section 6231(a) safe harbor.

they include "which party's motion we are presently considering and whether the information is peculiarly within the knowledge of one party." Those factors counsel in favor of placing the burden on respondent here: We are considering respondent's Motion, and the date of the FPA's mailing is peculiarly within respondent's knowledge. Our conclusion that the BBA's provisions concerning the issuance and mailing of an FPA should be construed in pari materia with the deficiency and TEFRA provisions lends additional support. We place on respondent the burden of proving, by competent and persuasive evidence, the date he mailed the two copies of the FPA to Big Apple and to Mr. Bhutta.

A properly completed USPS Form 3877 is direct evidence of the date and fact of mailing. *Coleman*, 94 T.C. at 90; *Magazine*, 89 T.C. at 324–27. Generally, if the Commissioner establishes that the notice existed and produces a properly completed USPS Form 3877 showing that the notice was sent to the taxpayer's last known address, the Commissioner is entitled to a presumption of proper mailing. *See Coleman*, 94 T.C. at 91. A properly completed USPS Form 3877 is one completed in compliance with the Commissioner's established procedure for mailing. *See Lander v. Commissioner*, 154 T.C. 104, 118 (2020). Even without the presumption of proper mailing, the Commissioner may prevail by providing otherwise sufficient evidence of mailing. *See Coleman*, 94 T.C. at 91–92; *Portwine*, T.C. Memo. 2015-29, at *11.

There is no dispute that the FPA exists because Big Apple attached two copies of it to its Petition. Respondent attached to his Motion a USPS Form 3877 related to the two copies of the FPA. The USPS Form 3877 includes a USPS date stamp for August 11, 2022, and lists tracking numbers for two articles of mail, along with Big Apple's and Mr. Bhutta's names and addresses, which match those shown on the two copies of the FPA. Nonetheless, the USPS Form 3877 is incomplete because it contains no indication of the number of articles received by USPS and is not signed or initialed by a USPS employee. *See O'Rourke v. United States*, 587 F.3d 537, 541 (2d Cir. 2009) (per curiam); *O'Neill v. Commissioner*, T.C. Memo. 2025-49, at *2–3; *Bobbs v. Commissioner*, T.C. Memo. 2005-272, 2005 WL 3157919, at *2; *Wheat v. Commissioner*, T.C. Memo. 1992-268, 1992 WL 95632, at *4. Therefore, respondent is not entitled to the presumption of proper mailing to prove that he mailed the two copies of the FPA on August 11, 2022.

While the USPS Form 3877 is insufficient to create a presumption of proper mailing, respondent may still satisfy his burden to show the date of mailing if the evidence of mailing is otherwise sufficient. *See Coleman*, 94 T.C. at 91–92; *Bobbs v. Commissioner*, 2005 WL 3157919, at *2–3. Although an incomplete USPS Form 3877 is insufficient to create a presumption of proper mailing, it nonetheless has probative value and may be combined with additional evidence to meet the Commissioner's burden. *See O'Rourke*, 587 F.3d at 541–42; *Coleman*, 94 T.C. at 91–92; *Portwine*, T.C. Memo. 2015-29, at *11; *Massie v. Commissioner*, T.C. Memo. 1995-173, 1995 WL 225549, at *3, *aff'd*, 82 F.3d 423 (9th Cir. 1996) (unpublished table decision). In this case the USPS Form 3877 bears a date stamp from the Dunn Loring, Virginia, Post Office reflecting the same issuance date shown on both copies of the FPA, August 11, 2022. The USPS Form 3877 lists Big Apple's and Mr. Bhutta's names and addresses, as well as the corresponding certified mail tracking numbers, exactly as they are listed on each respective copy of the FPA. Respondent has also provided two USPS Forms 3800 bearing August 11, 2022, date stamps by the Dunn Loring, Virginia, Post Office, which together reflect the same names, addresses, and tracking numbers. *Cf. Keado v. United States*, 853 F.2d 1209, 1213 (5th Cir. 1988). Big Apple has not disputed that the addresses used were the last known addresses. Nor has Big Apple argued that respondent failed to follow proper mailing procedures. We find that under the circumstances here, respondent has come forward with sufficient evidence to prove the August 11, 2022, mailing date. *Cf. Bobbs v. Commissioner*, 2005 WL 3157919, at *3 (finding an incomplete certified mailing list sufficient to establish the date of a notice's mailing in view of the surrounding circumstances even absent corroborating USPS Forms 3800).

The burden of production shifts to Big Apple to show that respondent did not mail the two copies of the FPA on August 11, 2022. *See Coleman*, 94 T.C. at 92. Although Big Apple asserts that it received them in November 2023, it has adduced no evidence of a mailing date other than August 11, 2022. The preponderance of the evidence supports a finding that respondent mailed the two copies of the FPA to Big Apple and to Mr. Bhutta on August 11, 2022. Thus, the deadline to file a petition with this Court was November 9, 2022.

Big Apple's Petition was mailed to the Court no earlier than November 6, 2023, the date on the printed stamp affixed to the envelope received by the Court, which is 452 days after the two copies of the FPA were mailed. *Cf. Pearson v. Commissioner*, 149 T.C. 424, 440 (2017)

(Buch, J., concurring) (noting that dates printed on postage labels "do not guarantee the date on which the item is deposited with" USPS and instead indicate only "the day a customer purchased postage"). Regardless of whether the rule of section 7502(a) applies despite the partially obscured postmark, whose date we cannot discern, Big Apple did not timely file its Petition.

IV. *Whether the Section 6234(a) Filing Deadline is Jurisdictional*

There is no dispute that the FPA exists, and respondent has established that he properly mailed a copy of it to both Big Apple and Mr. Bhutta. We must now determine as a matter of first impression whether we have jurisdiction to readjust the Commissioner's adjustments in an FPA when a partnership untimely files a petition in a section 6234 case.

If a federal court's subject matter jurisdiction depends on the timely filing of a complaint or petition, "a litigant's failure to comply with the bar deprives a court of all authority to hear a case." *United States v. Wong*, 575 U.S. 402, 408–09 (2015). Courts must enforce the deadline sua sponte, the deadline cannot be tolled or waived, and there is no room for equitable exceptions to be made on account of the specific facts of a case. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Instead, late-filed cases must be dismissed for lack of jurisdiction. *See id.*

Claim-processing rules, on the other hand, are those that "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). The failure to meet a claim-processing rule "do[es] not deprive a court of authority to hear a case." *Wong*, 575 U.S. at 410. "[F]iling deadlines . . . are quintessential claim-processing rules," *Henderson*, 562 U.S. at 435, and "ordinarily are not jurisdictional," *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 154 (2013). This is true "even when the time limit is important . . . and even when it is framed in mandatory terms." *Wong*, 575 U.S. at 410. Deadlines that are claim-processing rules are subject to the rebuttable presumption that they may be equitably tolled upon the particular facts of a case. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990). A litigant's failure to meet the deadline risks dismissal for failure to state a claim. *See Arbaugh*, 546 U.S. at 511–13. Nonetheless, the issue of the complaint's or the petition's timeliness may be waived. *See Kontrick v. Ryan*, 540 U.S. 443, 459–60 (2004).

Beginning in the early 2000s, the Supreme Court endeavored to "bring some discipline" to the use of the jurisdictional label. *See Henderson*, 562 U.S. at 435 (first citing *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161–62 (2010); and then citing *Kontrick*, 540 U.S. at 455); *see also Arbaugh*, 546 U.S. at 510–11. It perceived a problem with "drive-by jurisdictional rulings," *see Arbaugh*, 546 U.S. at 511 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998)), and instructed that "[c]larity would be facilitated if courts and litigants used the label 'jurisdictional' not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority," *Kontrick*, 540 U.S. at 455.

"Congress is free to attach the conditions that go with the jurisdictional label to . . . a claim-processing rule." *Henderson*, 562 U.S. at 435. "[I]t is no less 'jurisdictional' when Congress prohibits federal courts from adjudicating an otherwise legitimate 'class of cases' after a certain period has elapsed . . . ." *Bowles v. Russell*, 551 U.S. 205, 213 (2007). "Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional and so prohibit a court from tolling it." *Wong*, 575 U.S. at 410. Congress, however, "need not use magic words," *Henderson*, 562 U.S. at 436, as a statutory deadline may be jurisdictional even without using the word "jurisdiction," *see, e.g.*, *Bowles*, 551 U.S. at 208–10 (holding 28 U.S.C. § 2107(a) and (c) to be jurisdictional). But the "traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences." *Wong*, 575 U.S. at 410.

"To determine whether Congress has made the necessary clear statement, we examine the 'text, context, and relevant historical treatment' of the provision at issue." *Musacchio v. United States*, 577 U.S. 237, 246 (2016) (quoting *Reed Elsevier*, 559 U.S. at 166). Statutes that provide jurisdictional deadlines share several qualities. They speak of a court's power in jurisdictional terms or refer to a court's jurisdiction. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982). They "define a federal court's jurisdiction . . . , address its authority to hear untimely suits, [and] cabin its usual equitable powers." *Wong*, 575 U.S. at 411. Finally, their context—such as their placement within a statutory regime, history of reenactments, or longstanding judicial interpretation—reflects that Congress imbued a deadline with jurisdictional consequences. *See, e.g.*, *id.* at 410; *Henderson*, 562 U.S. at 439; *Bowles*, 551 U.S. at 209–13; *Zipes*, 455 U.S. at 394.

The clear-statement rule is a high bar to meet. *Boechler, P.C. v. Commissioner*, 142 S. Ct. 1493, 1499 (2022). It is not enough that one interpretation is better than the other. *Id.* "To satisfy the clear-statement rule, the jurisdictional condition must be just that: clear." *Id.* And "[w]here multiple plausible interpretations exist—only one of which is jurisdictional—it is difficult to make the case that the jurisdictional reading is clear." *Id.* at 1498 (citing *Sossamon v. Texas*, 563 U.S. 277, 287 (2011)).

Recently, we held in *North Wall Holdings, LLC v. Commissioner*, 165 T.C. 143, 154 (2025), that the filing deadlines in section 6226 under TEFRA are jurisdictional because the statute imposes a highly detailed and technical regime consisting of coordinated deadlines that cannot be read to contain implicit exceptions and that would fail to function were equitable tolling applied. In our discussion, we noted that the Supreme Court has twice before addressed whether a particular deadline in the tax area is subject to equitable tolling: in *United States v. Brockamp*, 519 U.S. 347 (1997), which predated the mandate to bring discipline to the term "jurisdictional" made in *Henderson* and *Arbaugh*; and most recently in *Boechler, P.C. v. Commissioner*, 142 S. Ct. 1493. Only in *Boechler* did the Supreme Court also address the question of whether the filing deadline at issue was jurisdictional. In *Boechler*, the Supreme Court reviewed section 6330(d)(1), which reads: "The person may, within 30 days of a determination under this section, petition the Tax Court for review of such determination (and the Tax Court shall have jurisdiction with respect to such matter)." Because the phrase "such matter," notably contained in a parenthetical at the end of the statute at issue, had no clear antecedent in this context, there was no "clear tie" between the filing deadline and the Court's jurisdiction.[11] *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1497–99.

Since the decision in *Boechler*, this Court has reaffirmed the jurisdictional nature of the filing deadlines in section 6015(e)(1)(A) in *Frutiger*, 162 T.C. 98; and section 6213(a) in both *Hallmark Research Collective v. Commissioner*, 159 T.C. 126 (2022), and *Sanders v.*

---

[11] The Supreme Court arrived at this conclusion, in part, by comparing the text of section 6330(d)(1) to that of section 6015(e)(1)(A), which "much more clearly link[s] [its] jurisdictional grant[] to a filing deadline." *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1498–99. Although we cannot rely on this statement as constituting a precedential interpretation of section 6015(e)(1)(A) as jurisdictional, it is relevant and can be given weight in analyzing issues. *Frutiger v. Commissioner*, 162 T.C. 98, 105 (2024) (citing *United States v. Montero-Carmargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000)).

*Commissioner*, 161 T.C. 112 (2023).[12]  In contrast, we concluded in *Belagio Fine Jewelry*, 162 T.C. at 251–60, that the filing deadline in section 7436(b)(2) is not jurisdictional because it is not clearly linked to the grant of jurisdiction to the Court in section 7436(a).  It is against this backdrop that we now review section 6234(a).

A.  *Text of Section 6234(a)*

We begin with an analysis of the text of the statute itself. *See Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1497–98; *Frutiger*, 162 T.C. at 103 (citing *Blue Lake Rancheria v. United States*, 653 F.3d 1112, 1115 (9th Cir. 2011)).  If the statutory language is plain, we must enforce it according to its terms.  *Frutiger*, 162 T.C. at 103 (first citing *King v. Burwell*, 576 U.S. 473, 486 (2015); and then citing *Green v. Commissioner*, 707 F.2d 404, 405 (9th Cir. 1983), *rev'g* 78 T.C. 428 (1982)).  When deciding whether the language is plain, we must read the words "in their context and with a view to their place in the overall statutory scheme." *Id.* (quoting *King*, 576 U.S. at 486).  Oftentimes, the "meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *King*, 576 U.S. at 486 (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000)).  Our duty is "to construe statutes, not isolated provisions," *id.* (quoting *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 290 (2010)), and our focus is on whether the statute expressly refers to the Court's authority to hear a case rather than merely the consequences to the taxpayer, *Belagio Fine Jewelry*, 162 T.C. at 251–52 (first citing *Harrow v. Dep't of Def.*, 144 S. Ct. 1178, 1183–84 (2024); then citing *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1500; then citing *Wong*, 575 U.S. at 411; then citing *Dolan v. United States*, 560 U.S. 605, 610 (2010); then citing *Reed Elsevier*, 559 U.S. at 161; and then citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994)).

The statute provides as follows:

Sec. 6234. Judicial review of partnership adjustment
(a) In general.—Within 90 days after the date on which a notice of a final partnership adjustment is mailed under section 6231 with respect to any partnership taxable

---

[12] The U.S. Courts of Appeals for the Second, Third, and Sixth Circuits, in contrast, have held that the filing deadline in section 6213(a) is not jurisdictional post *Boechler*.  *See Buller v. Commissioner*, 160 F.4th 266 (2d Cir. 2025); *Oquendo v. Commissioner*, 148 F.4th 820 (6th Cir. 2025); *Culp v. Commissioner*, 75 F.4th 196 (3d Cir. 2023).

year, the partnership may file a petition for a readjustment for such taxable year with—

    (1) the Tax Court,

    (2) the district court of the United States for the district in which the partnership's principal place of business is located, or

    (3) the Court of Federal Claims.

(b) Jurisdictional requirement for bringing action in district court or Court of Federal Claims.—

    (1) In general.—A readjustment petition under this section may be filed in a district court of the United States or the Court of Federal Claims only if the partnership filing the petition deposits with the Secretary, on or before the date the petition is filed, the amount of (as of the date of the filing of the petition) the imputed underpayment, penalties, additions to tax, and additional amounts with respect to such imputed underpayment if the partnership adjustment was made as provided by the notice of final partnership adjustment. The court may by order provide that the jurisdictional requirements of this paragraph are satisfied where there has been a good faith attempt to satisfy such requirement and any shortfall of the amount required to be deposited is timely corrected.

    (2) Interest payable.—Any amount deposited under paragraph (1), while deposited, shall not be treated as a payment of tax for purposes of this title (other than chapter 67).

(c) Scope of judicial review.—A court with which a petition is filed in accordance with this section shall have jurisdiction to determine all partnership-related items for the partnership taxable year to which the notice of final partnership adjustment relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount for which the partnership may be liable under this subchapter.

(d) Determination of court reviewable.—Any determination by a court under this section shall have the force and effect of a decision of the Tax Court or a final judgment or decree of the district court or the Court of Federal Claims, as the case may be, and shall be reviewable as such. The date of any such determination

shall be treated as being the date of the court's order entering the decision.

(e) Effect of decision dismissing action.—If an action brought under this section is dismissed other than by reason of a rescission under section 6231(c), the decision of the court dismissing the action shall be considered as its decision that the notice of final partnership adjustment is correct, and an appropriate order shall be entered in the records of the court.

By itself, section 6234(a), which provides the filing deadline, clearly contains a permissive grant for a partnership to file a claim but not a grant of jurisdiction. *Compare* § 6234(a), *with Auburn Reg'l Med. Ctr.*, 568 U.S. at 154 (concluding that the phrase "may obtain a hearing" does not speak in jurisdictional terms). Although it is not required, the statute does not contain the word "jurisdiction." *See Bowles*, 551 U.S. at 208–13. *But see Buller*, 160 F.4th at 269 (finding significant that section 6213(a) did not include the word "jurisdiction" in the relevant portion of the statute); *Oquendo v. Commissioner*, 148 F.4th at 832. It simply lists the venues in which a partnership may file after receiving a timely FPA and within the 90-day deadline. There is no language beyond mere reference to the courts of review that speaks to the Court's authority to hear a case, just "mundane statute-of-limitations language." *Wong*, 575 U.S. at 410. Section 6234(a) does not even go as far as section 7436(b)(2) in providing the consequences of an untimely filing. *See Belagio Fine Jewelry*, 162 T.C. at 252.

Instead, we find our grant of jurisdiction in section 6234(c). Whereas section 6234(a) appears to speak only to deadlines directed at the taxpayer, section 6234(c) speaks very clearly and directly to the jurisdiction of the reviewing court. Section 6234(c) mandates that a court "shall have jurisdiction," *see Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016) ("[T]he word 'shall' usually connotes a requirement."), and specifies what precisely a court may review and determine, i.e., "partnership-related items . . . the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount for which the partnership may be liable under this subchapter," § 6234(c). The proximity, or lack thereof, of the filing deadline to the jurisdictional grant is not dispositive, however. *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1499. "[T]he important feature is . . . a clear tie between the deadline and the jurisdictional grant." *Id.* And in this case, we think that analysis comes down to the clarity of the phrase "in accordance with," as used in section

6234(c). *Compare* § 6234(c), *with Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1497–99 (identifying the phrase "such matter" as that which "mark[s] the bounds of the Tax Court's jurisdiction").[13]

The ordinary meaning of the phrase "in accordance with" is "in agreement or harmony with; in conformity to; according to." *See Accordance*, *Oxford English Dictionary*, https://www.oed.com/dictionary /accordance_n?tab=meaning_and_use#37376661 (last visited July 20, 2026); *In accordance with*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/in%20accordance%20with (last visited July 20, 2026) ("in a way that agrees with or follows (something, such as a rule or request)"); *see also Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1750 (2020) ("[T]he law's ordinary meaning at the time of enactment usually governs . . . ."); *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 634 (2012) ("[I]t is normal usage that, in the absence of contrary indication, governs our interpretation of texts." (first citing *Crawford v. Metropolitan Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009); and then citing *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995))). The statute could therefore quite plausibly be read as saying that a court shall not have jurisdiction to review "partnership-related items" where a petition is filed in nonconformity with the express requirements of section 6234,[14] including section 6234(a). *See United States v. Menasche*, 348 U.S. 528, 538 (1955) (applying the surplusage canon under which "[t]he cardinal principle of statutory construction is to save and not to destroy" (quoting *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 30 (1937))); *see also Growmark, Inc. & Subs. v. Commissioner*, 160 T.C. 475, 486 (2023) ("When construing a statute, the Court must interpret it 'so as to avoid rendering any part of the statute meaningless surplusage.'" (quoting *15 W. 17th St. LLC v. Commissioner*, 147 T.C. 557, 586 (2016))).[15] Although this interpretation is plausible, we stop

---

[13] The phrase "in accordance with" is the only language in section 6234(c) that speaks to the nature of the petition.

[14] We do not think the phrase "this section" as used in section 6234(c) is ambiguous. The phrase follows the statement "a petition . . . filed in accordance with," and yet subsection (c) does not speak to any filing requirements whatsoever, only limitations on the reviewing courts. The phrase therefore cannot be read to refer only to subsection (c). We likewise see no reason to read "this section" as referring to only subsection (b). There are filing requirements in both subsections (a) and (b), the latter of which only outlines requirements for the Court of Federal Claims and the district courts, whereas subsection (c) also refers to this Court's jurisdiction.

[15] Reading the phrase "in accordance with" to provide no limitation with respect to the exercise of judicial review over an untimely filing may well render it

short of concluding that it is clear because of Congress's decision to explicitly use alternative, far stronger jurisdictional language in section 6234(b).

"[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972) (per curiam) (alteration in original)); *see also Enbridge Energy, LP v. Nessel ex rel. Michigan*, 146 S. Ct. 1074, 1084 (2026) (citing *Bittner v. United States*, 143 S. Ct. 713, 720 (2023)); *United Therapeutics Corp. v. Commissioner*, 160 T.C. 491, 512 (2023), *aff'd*, 105 F.4th 183 (4th Cir. 2024). In contrast to the permissive language of section 6234(a), section 6234(b) very clearly delineates "jurisdictional requirements," referring to them in both the title[16] and the body of the statute.[17] Courts have long recognized that the phrase "jurisdictional requirements" as used in the body of former section 6226(e)(1) under TEFRA, which nearly mirrored the text of section 6234(b)(1), rendered the deposit requirements described therein jurisdictional prerequisites. *See, e.g.*, *Letko v. United States*, 176 Fed. Cl. 682, 685 (2025). Indeed, we can think of no phrasing more clearly intended to convey the jurisdictional nature of a requirement than "jurisdictional requirements."[18]

---

surplusage, particularly given that we find no ambiguity in the phrase "this section." *See supra* note 14. But surplusage is one of many tools of statutory interpretation designed to assist us in ascertaining legislative intent. *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001). It may be countered or outweighed by other factors that more clearly evince intent, which we think is the case here. *Id.*

[16] The title of section 6234(b) refers to a singular "[j]urisdictional requirement."

[17] Although section 7806(b) prohibits us from giving legal effect to any captions used in the Code, the phrase "jurisdictional requirements" as used in the body of section 6234(b)(1) is not clouded or overridden by the caption, but reinforced. *Compare* § 6234(b), *with Rowen v. Commissioner*, 156 T.C. 101, 112 n.9 (2021) (noting that section 7806(b) prohibits reliance on a caption which clouds or overrides the plain text of the statute (first citing *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 222–23 (1996); and then citing *N.Y. Presbyterian Hosp. v. United States*, 881 F.3d 877, 886 n.13 (Fed. Cir. 2018))); *see also Couturier v. Commissioner*, 162 T.C. 55, 81 (2024) (Toro, J., concurring) ("[T]he legal rule of section 7806(b) does not cause the word 'assessment' to disappear from the amendment [at issue].").

[18] We need not, and do not, decide whether the requirements of section 6234(b)(1) are jurisdictional, however. We rely on section 6234(b) solely for

Further, section 6234(b)(1) explicitly limits a partnership to filing a claim "only if" it makes the required deposit. Such conditional language does not appear anywhere else in section 6234, including section 6234(a) and (c). Section 6234(a) does not limit a partnership to filing "only if" the petition is filed within the 90-day deadline, and section 6234(c) does not permit review "only if" it is "in accordance with this section." At the very least, that Congress chose to use this language in one part of the statute, but omit it from the part that speaks to the authority and scope of the courts of review, undermines the claim that "in accordance with" *clearly* ties judicial review in section 6234(c) to the 90-day deadline in section 6234(a). *See Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1499–500 ("If anything, § 6330(e)(1)'s clear statement— that '[t]he Tax Court shall have no jurisdiction . . . to enjoin any action or proceeding unless a timely appeal has been filed'—highlights the lack of such clarity in § 6330(d)(1)."). It is perfectly *plausible* to read "in accordance with" as conditioning jurisdiction on the requirements of section 6234(a) including the filing deadline. All that is *clear*, however, is that Congress could have used the same phrase "jurisdictional requirements" throughout section 6234 and yet chose to use it only in section 6234(b). Accordingly, we find no clear tie between the 90-day filing deadline in section 6234(a) and the jurisdictional grant in section 6234(c).

B. *Context of Section 6234*

If we expand our frame of reference beyond section 6234, the text and context of the BBA's overall statutory scheme lend themselves to a nonjurisdictional reading of the petition filing deadline as well. The TEFRA partnership audit and litigation provisions were "distressingly complex and confusing" because they "blend[ed] the entity and aggregate theories" of partnership tax. *Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner*, 114 T.C. 533, 540 (2000). The BBA now provides a different regime in which "[a]ny adjustment to a partnership-related item shall be determined, and any tax attributable thereto shall be assessed and collected, . . . at the partnership level, except to the extent otherwise provided in" subchapter C of chapter 63 of subtitle F of the Code. § 6221(a).

---

comparison. *See, e.g.*, *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1498–99 (comparing the text of section 6330(d)(1) to section 6015(e)(1)(A) in an analysis of solely the former).

In *North Wall*, 165 T.C. at 151, we concluded that the filing deadlines in section 6226 were jurisdictional for three primary reasons. First, TEFRA contained multiple deadlines "coordinate[d] to ensure that there is only one partnership-level proceeding and that, with limited exceptions, all partners are bound by that proceeding." *Id.* Although section 6234(a) shares the prerequisite of a validly issued FPA with section 6226 of TEFRA (an FPAA) and likewise imposes a 90-day deadline from the mailing date of the FPA to file for judicial review, *see N. Wall*, 165 T.C. at 154–56, that is where the similarities on this point end. Because the BBA is intended to take an entity-focused approach, section 6234(a) does not contain multiple coordinated deadlines intended to result in one partnership-level proceeding. Instead, the BBA uses section 6223 to ensure that there is only one party to the proceeding—the partnership by and through the partnership representative—and therefore only one filing under section 6234. In doing so, the BBA avoids the "distressingly complex and confusing" menu of petitions and deadlines that were central to TEFRA's administrative scheme. *Rhone-Poulenc Surfactants & Specialties, L.P.*, 114 T.C. at 540.

Second, although we made this point in *North Wall* in the context of whether equitable tolling applies,[19] we think it relevant in this analysis as highlighting the fundamental structural differences between TEFRA and the BBA: The TEFRA regime contained explicit, highly detailed exceptions to the filing deadlines clearly showing that implicit exceptions such as equitable tolling could not easily be read into it. *North Wall*, 165 T.C. at 164–66.[20] These detailed exceptions were intended to account for "people who might be unable to file a timely petition." *Id.* at 165. In contrast, the BBA does not provide a multitude of tailored exceptions to the rule created by sections 6223 and 6234 that only the partnership, by and through the partnership representative, may initiate a proceeding within 90 days of the mailing of an FPA, *see*

---

[19] In *Boechler, P.C. v. Commissioner*, 142 S. Ct. 1493, the Supreme Court separately evaluated whether a deadline was jurisdictional and whether it could be subject to equitable tolling.

[20] Specifically, we pointed to former section 6226(b)(5), *see N. Wall*, 165 T.C. at 165 (granting relief for premature petitions); former section 6223(e), *N. Wall*, 165 T.C. at 165 (allowing a partner who does not receive timely notice to choose whether to be bound by a TEFRA proceeding or proceed independently, thereby addressing a "potentially inequitable situation in which the Commissioner does not provide proper notice to a partner"); and former sections 6226(d) and 6231(b), *N. Wall*, 165 T.C. at 165 (allowing a partner in a bankruptcy proceeding to be removed from the TEFRA proceeding and exempted from the petition deadline).

§ 6234(a) ("the partnership may file a petition"), because the BBA is designed to centralize all parts of the audit, assessment, and collection process at the partnership level, using section 6232(f) as a backstop, *see* § 6221(a). So while the BBA does provide alternatives to how imputed underpayments may be taken in by the partnership,[21] partners are bound by the actions of the partnership representative and may not initiate their own section 6234 proceeding. *See Mammoth Cave*, 166 T.C., slip op. at 6–7.

The BBA does provide one main exception to the requirements under section 6223 and 6234(a): a complete "opt-out" of BBA procedures under section 6221.[22] Section 6221 allows partnerships with 100 or fewer partners[23] to opt out of the BBA procedures for a taxable year through an election made on a timely filed return for that year. *See* § 6221(b). The election is valid only for the taxable year for which it is made and is binding on all partners unless determined to be invalid. *Id.*; *see also* Treas. Reg. § 301.6221(b)-1(c), (e). If validly made, an opt-out election means that partnership items would be adjusted in a partner-level audit rather than a centralized proceeding under the BBA, thereby placing liability for any imputed underpayment on the partners rather than the partnership.[24] This particular exception to the BBA is notably far broader and more generalized than the exceptions found under

---

[21] *See supra* note 4. These procedures modify assessment and collection, not judicial review. Section 6226, for example, allows partnerships to issue so-called push-out statements to the partners once an FPA has been issued, thereby passing liability for an imputed underpayment directly to the reviewed-year partners from the partnership itself. This exception does not provide relief to those who "might be unable to file a timely petition," *N. Wall*, 165 T.C. at 165, because it only turns off the application of section 6225 to require that the partners pay any imputed underpayment without changing the rules under sections 6223 and 6234. In other words, an election under section 6226 does not change who may file for judicial review or when under the BBA.

[22] There are two other exceptions to the general rule under section 6223. First, Treasury Regulation § 301.6222-1(c)(4) allows the Commissioner to initiate an audit of a partner who files a return that is inconsistent with the partnership's return. Second, section 6241(11) authorizes the Commissioner to initiate a partner-level proceeding where a partnership-related item involves special enforcement matters. Neither of these is designed to provide an alternate option for a partnership unable to timely file.

[23] As long as those partners are an "individual, a C corporation, any foreign entity that would be treated as a C corporation were it domestic, an S corporation, or an estate of a deceased partner." § 6221(b)(1)(C).

[24] TEFRA procedures would not apply because it was repealed entirely by the BBA for tax years beginning after 2017. *See supra* note 2.

TEFRA.[25]  Section 6221 allows a partnership to forgo the BBA in its entirety for that tax year as opposed to providing alternative filing methods for specialized classes still within the regime itself as TEFRA did.  *See North Wall*, 165 T.C. at 165–66.  Nothing about this section indicates to us that Congress intended for it to account for those who may fail to file on time; it was likely enacted out of recognition that an entity-based audit, assessment, and collection approach may not be appropriate for all partnerships.

Third, we held in *North Wall* that equitable tolling was not compatible with TEFRA's assessment procedures.[26]  *Id*. at 161–64.  TEFRA's complex assessment process, by which partnership-level adjustments were converted to partner-level assessments, could not function without a clearly fixed and final assessment date.  *Id.*  The system would grind to a halt if the Commissioner were required to unwind actions taken against each partner, which in some cases may include other partnerships, every time a petition was equitably tolled.  *Id.*  Put simply, "allowing equitable tolling because of one party's circumstances would affect multiple parties."  *Id*. at 160.  But whereas equitable tolling of a TEFRA petition threatened administrative paralysis, it only poses headaches under the BBA.

The BBA uses certain timing concepts, including and especially the adjustment year, *see* § 6225(d)(2), to ensure that the partnership is treated primarily as an entity and that the aggregate theory of the partnership—while not obsolete in tax procedure—is only invoked selectively (e.g., in aid of collection after liability has been finally determined in the adjustment year).  Under the default rule,[27] who

---

[25] TEFRA did exclude small partnerships with fewer than ten partners under former section 6231(a)(1)(B), but, importantly, this operated as an opt-in rather than an opt-out alternative, allowing small partnerships to elect into TEFRA.  TEFRA's small partnership provision, therefore, did not provide an alternative for partnerships looking to avoid the regime's filing requirements, but the exact opposite, functioning more as an exclusion than an exception.

[26] Although a nonjurisdictional deadline is not necessarily subject to equitable tolling, *see, e.g.*, *Enbridge Energy*, 146 S. Ct. 1074, we nevertheless think that a regime's compatibility with equitable remedies can be instructive in our search for a clear statement.  That an extension of court review beyond a filing deadline, such as that created by equitable tolling, would  wreak havoc on the functionality of a regime as it did under TEFRA lends support to the contention that Congress did not intend to extend review at all.

[27] *See supra* note 4 (explaining assessment and collection alternatives available under the BBA).

qualifies as a partner of the partnership is "determined as of the close of the adjustment year." § 6232(f)(1)(B). The adjustment year is generally "the partnership taxable year in which . . . notice of the final partnership adjustment is mailed under section 6231" unless an adjustment in a section 6234 proceeding is made, in which case it is the year "such decision becomes final."[28] § 6225(d)(2). The Commissioner may not assess an imputed underpayment until 90 days have passed since the issuance of an FPA or, if a petition is filed under section 6234, until the decision of the court has become final. § 6232(b). Once the imputed underpayment is assessed and the Commissioner has made notice and demand for payment, the partnership has ten days to make payment, after which the Commissioner may assess a proportionate share of the imputed underpayment (with certain adjustments) on each partner. § 6232(f)(1). The Commissioner has two years from the date of notice and demand to assess an imputed underpayment on individual partners. § 6232(f)(6).

By virtue of the concept of the adjustment year, applying equitable tolling may result in a situation in which the notice-year partners (i.e., the partners at the close of the partnership taxable year in which an FPA is mailed) may no longer be the proper subjects of collection because there would be no adjustment-year partners until the decision of the court is final. *See* §§ 6225(d)(2), 6232(b)(2), (f)(1)(B). Were a partnership able to file beyond the 90-day deadline, the Commissioner would therefore need to unwind any assessments, including those made on individual partners under section 6232(f)(1)(B) and potentially any collection activities already taken, regardless of the final decision made. This raises two potential problems, neither of which supports a reading of the 90-day deadline under section 6234 as jurisdictional.

First, as to the game of musical chairs that may occur with respect to the partners ultimately liable for an imputed underpayment, this is not a product of the application of equitable tolling but of Congress's decision to tie liability to the adjustment year by default rather than to the reviewed year. Tying liability to the reviewed-year partners would

---

[28] There is another definition of the adjustment year "in the case of an administrative adjustment request under section 6227." § 6225(d)(2)(B). In that case, the adjustment year is the partnership taxable year in which "such administrative adjustment request is made." *Id.*

fix assessment to a particular party. *See supra* note 4.[29] But under the default rule, a partnership that timely files a section 6234 proceeding may likewise have different adjustment-year partners by the time a final decision is rendered. Thus, that the assessment may become a moving target provides no indication that Congress intended the 90-day deadline to be jurisdictional because such a result could occur regardless of the application of equitable tolling.[30]

Second, where an imputed underpayment has not been paid by the partnership, the Commissioner may assess that imputed underpayment on the individual partners. *See* § 6232(f). But, unlike TEFRA, this is never an individualized partner-level assessment, *see N. Wall*, 165 T.C. at 161–62 (discussing the tedious process of converting partnership-level adjustments into partner-level assessments), just an assessment of the partner's proportionate share of the imputed underpayment already assessed against the partnership,[31] § 6232(f)(1)(B), (3). More importantly, the Commissioner is not required to assess proportionate shares of an imputed underpayment against individual partners but may do so as a secondary means of collection. The assessment made against the partnership remains regardless of whether authority under section 6232(f)(1)(B) is exercised;[32] and even

---

[29] And in fact the opt-out and push-out elections under the BBA create this exact fix.

[30] The adjustment year is also used as a benchmark for several procedures related to the push-out election, including: (1) the partnership must furnish statements to the reviewed-year partners within 60 days of the later of (i) the 90-day deadline under section 6234(a) or (ii) if a petition is filed, the date when the court's decision becomes final, *see* Treas. Reg. § 301.6226-2(b)(1); (2) the partnership must pay any withholding tax due on the adjustments pushed out to reviewed-year partners on or before the due date of the partnership return in the adjustment year, *see* Treas. Reg. § 301.6241-6(b)(4)(i); and (3) when one of the reviewed-year partners is itself a passthrough entity, the passthrough partner must file a tracking report with the Commissioner and furnish statements to its own affected partners by the due date of the audited partnership return for the adjustment year, *see* Treas. Reg. § 301.6226-3(e)(1), (3)(ii). However, because a push-out election is contingent on the issuance of an FPA, we think it unlikely that a partnership would make a push-out election for partners to take adjustments into account, then untimely file for a section 6234 proceeding.

[31] Assessment of the proportionate share of a partner's imputed underpayment is done without deficiency procedures. § 6232(f)(6)(A); Treas. Reg. § 301.6232-1. Therefore individual Notices of Deficiency are not required for each partner.

[32] Section 6232(f)(1)(B) permits assessment on each partner of a partnership that has not paid an amount of imputed underpayment "to which section 6225 applies,"

where it is, either the partnership or the partners are able to pay off the imputed underpayment. § 6232(f)(4) (allowing payments of a partner's proportionate share of imputed underpayment to offset the total liability of the partnership). Any adjustments required to be made to partner-level attributes are the responsibility of the partnership, not the Commissioner.[33] So while unwinding assessments for individual partners may be a pain, it is not a pain inherent in the BBA assessment procedures, but merely the result of one tool of collection provided under section 6232(f)(1)(B).

In sum, although the text of sections 6234 of the BBA and 6226 of TEFRA is nearly identical,[34] we do not find in the BBA the same legal and administrative complexities that led us to our holding in *North Wall*.

### C. *Historical Treatment*

Given the clear similarities in text between former section 6226 and section 6234, *see supra* note 34, as well as the fact that the BBA does not benefit from an extensive judicial history, it would be tempting to rely on the historical treatment of TEFRA in determining whether the BBA's filing deadline is jurisdictional. In *North Wall*, 165 T.C. at 158–59, we pointed to nearly 40 years of jurisprudence supporting a jurisdictional reading of TEFRA's deadlines, particularly two relatively recent cases from the U.S. Courts of Appeals for the Ninth and Fifth Circuits: *SNJ Ltd. v. Commissioner*, 28 F.4th 936 (9th Cir. 2022), and

---

but does not turn off application of section 6225, thereby continuing to hold the partnership itself liable.

[33] Although regulations have not been finalized, Treasury has issued Proposed Treasury Regulation § 301.6225-4, 83 Fed. Reg. 4868, 4877 (Feb. 2, 2018), under which specified tax attributes are modified in the adjustment year from the amounts reported on the reviewed-year tax return without retroactive effect to reflect the imputed underpayment.

[34] *Compare* § 6234(a) ("Within 90 days after the date on which a notice of a final partnership adjustment is mailed under section 6231 with respect to any partnership taxable year, the partnership may file a petition for a readjustment for such taxable year . . . ."), *with* former § 6226(a) ("Within 90 days after the day on which a notice of a final partnership administrative adjustment is mailed to the tax matters partner, the tax matters partner may file a petition for a readjustment of the partnership items for such taxable year . . . ."); *compare also* § 6234(c) ("A court with which a petition is filed in accordance with this section shall have jurisdiction to determine all partnership-related items . . . ."), *with* former § 6226(f) ("A court with which a petition is filed in accordance with this section shall have jurisdiction to determine all partnership items . . . .").

*A.I.M. Controls, L.L.C. v. Commissioner*, 672 F.3d 390 (5th Cir. 2012). We have also consistently interpreted TEFRA's deadlines as jurisdictional. *See N. Wall*, 165 T.C. at 154; *Wise Guys Holdings*, 140 T.C. at 196; *Harbor Cove Marina Partners P'ship v. Commissioner*, 123 T.C. 64, 78 (2004); *Seneca, Ltd. v. Commissioner*, 92 T.C. 363, 365 (1989), *aff'd*, 899 F.2d 1225 (9th Cir. 1990) (unpublished table decision). But Congress repealed TEFRA and completely replaced it with the BBA. *See supra* note 2. This was no statutory amendment or supplement. By enacting the BBA, Congress completely overhauled the partnership audit and litigation system, particularly the petition filing process.[35] *See N. Wall*, 165 T.C. at 167 (discussing TEFRA's highly technical filing process involving multiple exceptions and coordinated deadlines designed to afford flexibility without "interfer[ing] with the TEFRA proceeding"); *see also supra* Part IV.B. For us to properly rely on TEFRA's judicial history, then, we would need to conclude that Congress intended to enact in the BBA the same jurisdictional 90-day filing deadline as provided under former section 6226(a) while otherwise largely disposing of the TEFRA regime. We see only two routes by which that could be accomplished.

First, when a long line of Supreme Court decisions, left undisturbed by Congress, has treated a requirement similar to the one at issue as jurisdictional, we presume that Congress intended parallel treatment for the requirement at issue. *Henderson*, 562 U.S. at 436 (first citing *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 82 (2009); and then citing *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133–34, 139 (2008)); *Belagio Fine Jewelry*, 162 T.C. at 257. The Supreme Court, however, has not ruled on TEFRA's filing deadlines or on a requirement similar to section 6234(a). *Compare* § 6234(a), *with Belagio Fine Jewelry*, 162 T.C. at 258 (noting that the Supreme Court has never considered whether the deadline in section 7436(b)(2) is jurisdictional).

Second, in *Hallmark* and *Sanders*, we considered the prior-construction canon in examining the historical treatment of section 6213(a). *See Sanders*, 161 T.C. at 118–19; *Hallmark Rsch. Collective*, 159 T.C. at 153–63. "[T]he principal ground of our decision [in *Hallmark*] was the 'prior-construction canon,' which is a principle distinct from stare decisis." *Sanders*, 161 T.C. at 118–19. Whereas

---

[35] And it is the petition filing process to which the 90-day deadline directly relates.

"[s]tare decisis involves deference to the judicial process and to court opinions per se," the prior-construction canon "involves deference to the legislative function and to Congress's presumed or expressed intention when, in amending and reenacting a statute, it leaves unchanged the statutory text that the courts have consistently construed." *Id.* at 119. "When administrative and judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language *in a new statute* indicates, as a general matter, the intent to incorporate its administrative and judicial interpretations as well." *Bragdon v. Abbott*, 524 U.S. 624, 645 (1998) (emphasis added) (citing *Lorillard v. Pons*, 434 U.S. 575, 580–81 (1978)).

The Supreme Court, however, has advised that we are not to accord precedential effect to rulings in which the court fails to expressly consider whether a dismissal should be for lack of jurisdiction or failure to state a claim. *Boechler, P.C. v. Commissioner*, 142 S. Ct. at 1500 (citing *Henderson*, 562 U.S. at 435) (treating caselaw related to the jurisdictional nature of filing deadlines which predated the mandate in *Henderson* to bring discipline to the term "jurisdictional" as nonprecedential). We also may not, for purposes of the prior-construction canon, rely on caselaw that post-dates the enactment of the requirement at issue absent a subsequent amendment or reenactment retaining the language held jurisdictional. *See Belagio Fine Jewelry*, 162 T.C. at 259 (concluding that cases decided subsequent to the most recent amendment of a statute cannot be given precedential effect for purposes of the prior-construction canon). Consequently, our judicial history is limited to just *A.I.M. Controls* and *Wise Guys Holdings*.[36]

Even accepting the similarity in text between former section 6226 and section 6234, we think it too much of a stretch to say that two cases interpreting a preceding statute similarly worded to the one at issue but which operated in a vastly different administrative regime could be said to have "settled the meaning" of the statutory language used in the new statute or establish consistent construction from one statute to another. *Bragdon*, 524 U.S. at 645.[37]  BBA and TEFRA created two

---

[36] *Henderson* was decided in 2011. The BBA was enacted in 2015 and subsequently amended in 2016 and 2018. *See supra* note 2. *SNJ Ltd.* was decided in 2022, so we do not rely on it for purposes of the prior-construction canon.

[37] In *Hallmark*, 159 T.C. at 166, we relied on the "impressive history—almost a century long—of judicial construction of the 90-day deadline [under section 6213(a)]." *See also Auburn Reg'l Med. Ctr.*, 568 U.S. at 155 (holding a deadline nonjurisdictional

fundamentally different partnership audit and litigation regimes, in both purpose and function. Absent more extensive caselaw showing an interpretation of the same or similar language used in the same or similar regime, we struggle to find sufficient historical support for a jurisdictional reading and therefore conclude that we do not.

V.      *Conclusion*

Respondent has established that he properly issued and mailed the FPA to Big Apple and to Mr. Bhutta, and that Big Apple did not timely file this Petition. However, considering the relevant text, context, and history of section 6234(a), we conclude that Congress did not clearly state that the 90-day filing deadline is jurisdictional. We therefore are not deprived of jurisdiction because of Big Apple's untimely filing, and will deny respondent's Motion. We reserve judgment on whether the 90-day deadline is subject to equitable tolling until the parties raise this issue in an appropriate manner.

To reflect the foregoing,

*An appropriate order will be issued.*

---

in part because it was "scarcely the exceptional [case] in which a 'century's worth of precedent and practice in American courts' rank[ed] a time limit as jurisdictional" (quoting *Bowles*, 551 U.S. at 209 n.2)). We do not have the benefit of that in this case. Additionally, in *Bragdon*, the Supreme Court relied on 12 separate and distinct cases each of which interpreted the definition of a "handicap" to include "asymptomatic HIV infection," to show consistent use of the term from the Rehabilitation Act of 1973 to the Americans with Disabilities Act. *Bragdon*, 524 U.S. at 644. Not only was the list of caselaw more extensive in *Bragdon*, but the definition at issue did not affect the functionality of the regime itself, just its application to a particular circumstance. *Id.* at 637 (explaining that the statute is not operative as to an impairment unless the impairment affects a major life activity). The interpretation of section 6234 affects how the BBA functions, thereby elevating the importance of context in deciphering its meaning.